IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERNARD VOGEL, *et al.*,         *

   Plaintiffs,                  *

      v.                         *        Civil Action No.: RDB-17-2143

WENDY MORPAS, *et al.*,          *

   Defendants.                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Bernard Vogel, individually and as a personal representative of the estate of Jean Vogel, Thomas Vogel, Meredith Vogel, and Audrey Vogel (collectively, "Plaintiffs") bring this diversity action against Defendants Wendy Morpas ("Morpas"), Navigation, Inc., Navigation Group, Inc. (collectively "Navigation"), and Midlink Logistics, LLC ("Midlink") (collectively, "Defendants"), stemming from a motor vehicle accident involving Defendant Morpas and Jean Vogel. Currently pending before this Court is Defendant Midlink's Motion to Dismiss Counts IV, V and VII of the Complaint for lack of personal jurisdiction and for failure to state a claim for relief. (ECF No. 14.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Midlink's Motion to Dismiss (ECF No. 14) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to the wrongful death action under Michigan law (Count VII) and DENIED as to the survival and wrongful death actions under Maryland law (Counts IV and V).

1

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F. 3d 388, 390 (4th Cir. 2011). Defendant Midlink, a Michigan corporation, brokers shipping contracts for the interstate transportation of goods. (Compl., ECF No. 2 at ¶¶ 7-8.) On or around February 16, 2016, Midlink entered into a "Load Confirmation and Payment Agreement" (the "Agreement") for Defendant Navigation to provide transportation and/or trucking services for Peterson Farms, a client of Midlink. (*Id.* at ¶ 29; ECF No. 20-2.) The Agreement provided that Defendant Navigation would transport produce from Hart, Michigan to Philadelphia, Pennsylvania. (*Id.* at ¶ 29; ECF No. 20-2.) In addition, the Agreement stated that Defendant Navigation would make six intermediate stops between Michigan and Pennsylvania, including two stops in Maryland. (*Id.* at ¶ 29; ECF No. 20-2.) To execute the job, Defendant Navigation hired Defendant Morpas to drive a large, loaded eighteen-wheeler tractor trailer. (ECF No. 2 at ¶¶ 17, 27.) While Defendant Morpas was driving on Kate Wagner Road in Carroll County, Maryland, he went through a flashing red light at a high rate of speed without stopping or slowing down. (*Id.* at ¶ 18.) The tractor trailer struck Jean Vogel's vehicle which had been approaching the intersection with Kate Wagner Road, ultimately causing the vehicle to catch on fire and Jean Vogel's death.[1] (*Id.* at ¶¶ 17-19.)

On July 31, 2017, Plaintiffs filed the instant action in the Circuit Court for Carroll County, Maryland, bringing the following causes of action: survival action under Maryland

---

[1] On July 25, 2017, Morpas was found guilty of criminal negligent manslaughter by vehicle and three related traffic citations. Criminal Case No. 06-K-16-047627 (Cir. Ct. of Md. for Carroll County); *see* http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=06K16047627&loc=61&detailLoc=K.

law against all Defendants for negligence (Counts I, III, IV); survival action under Maryland law against Defendant Navigation for respondent superior liability for the actions of Defendant Morpas (Count II); wrongful death action under Maryland law against all Defendants (Count V); wrongful death action under Illinois law against Defendant Navigation (Count VI); and wrongful death against under Michigan law against Defendant Midlink (Count VII). Defendants removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1441. (ECF No. 1.) Currently pending before this Court is Defendant Midlink's Motion to Dismiss those Counts in which it is named, specifically, Counts IV, V, and VII, for lack of personal jurisdiction and failure to state a claim. (ECF No. 14.)

## STANDARD OF REVIEW

### I. Motion to Dismiss Under Rule 12(b)(2)

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F.Supp.3d 486, 489 (D. Md. 2014). While a court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F.Supp.3d at 489.

If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make "a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "'a threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

II. **Motion to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S. Ct. 1937, 1949 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

## ANALYSIS

### I. Maryland has personal jurisdiction over Defendant Midlink

Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *Sigala*, 145 F.Supp. at 489. Defendant Midlink argues that Plaintiff has not met either prong of the personal jurisdiction analysis.

When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), a federal district court must adhere to the interpretations of the Maryland Court of Appeals. *See Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citing *Carbone v. Deutsche Bank Nat'l Trust Co.*, No.

RDB-15-1963, 2016 WL 4158534, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985)). To satisfy the long-arm prong of a personal jurisdiction analysis, a plaintiff must specifically identify a provision in the Maryland statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). While it is preferable that a plaintiff identify the statute authorizing jurisdiction in its complaint, the plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n.1 (D. Md. 2004).

Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, courts must address both prongs of the personal jurisdiction analysis. *Metro. Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc.*, 888 F.Supp.2d 691, 699 (D. Md. 2012); *CSR, Ltd. V. Taylor*, 411 Md. 457, 475-76 (2009) (explaining that if exercising "jurisdiction in a given case would violate Due Process, [Maryland courts] construe our long-arm statute as not authorizing the exercise of personal jurisdiction over the defendant" (internal citations omitted)). Under the second prong, courts must determine whether the exercise of personal jurisdiction would comport with the due process requirements of the Fourteenth Amendment. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and

6

relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

Thus, a court may exercise two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). General jurisdiction arises when a defendant has continuous and systematic contacts in the forum state. *Id.* at 1780. On the other hand, specific jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. Regardless of which jurisdiction is asserted, the general rule is that "the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. V. Nicastro*, 564 U.S. 873, 877, 131 S. Ct. 2780, 2785 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1288 (1958)).

**A. Maryland's long-arm statute authorizes the exercise of personal jurisdiction**

Beginning with the first prong of the personal jurisdiction analysis, Plaintiff relies on two provisions of the Maryland long-arm statute, which state:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
> . . .
> (2) Contracts to supply goods, food, services, or manufactured products in the State; [or] . . .
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]

Maryland Long–Arm Statute, Md. Code. Ann., Cts. & Jud. Proc. § 6-103.

7

Beginning with § 6-103(b)(2), Plaintiff argues that Midlink provided services in Maryland when it "entered into a 'Load Confirmation and Payment Agreement' . . . with Defendant Navigation and/or Defendant Navigation Group, Inc. to 'transport various fresh produce . . . from the point of origination' in Michigan to Pennsylvania, with two intermediate stops in Maryland. (ECF No. 20 at 10.) Midlink, however, argues that it "did not conduct business or provide services in Maryland." (ECF No. 23 at 1.) Rather, it acted as a broker by connecting Peterson Farms with Defendant Navigation, and it was Navigation that was contracted to supply the goods. (*Id.* at 1-2); *see also* Affidavit of Mark Swetz, ECF No. 14-2 at ¶¶ j-k (explaining that once Navigation "accepted the load in Michigan, it became responsible for the load and the manner and means by which it reached its destination" and Midlink did not determine, contract for, or direct that any stops occur in Maryland).

Section (b)(2) covers "contracts to supply good and services *in* Maryland, irrespective of where the contract was negotiated." *Rao v. Era Alaska Airlines*, 22 F.Supp.3d 529, 535 (D. Md. 2014) (emphasis in original) (citing *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F.Supp.2d 365, 370 (D. Md. 2011)). The issue, then, is whether by brokering the Agreement that directed Navigation to make stops in Maryland, Defendant Midlink contracted to supply goods or services in Maryland. When viewing the facts and allegations in the light most favorable to Plaintiff, § (b)(2) is satisfied.[2] Defendant Midlink agreed to arrange for the transfer of produce by Defendant Navigation from Michigan to Philadelphia,

---

[2] Plaintiff also argues that C.J. § 6-103(b)(4) applies "because [Midlink's] actions caused tortious injury in Maryland while deriving substantial revenue from its brokerage of shipping contracts requiring deliveries in [Maryland]." (ECF No. 20 at 10.) Because this Court finds that § (b)(2) is satisfied, it does not reach this argument.

with two stops in Maryland. Although Defendant Midlink maintains that it was Peterson Farms' choice to make the stops in Maryland, there can be no dispute that Defendant Midlink brokered the Agreement on behalf of its client, and the Agreement facilitated the stops in Maryland. Thus, Plaintiff has made a *prima facie* showing that Maryland's long-arm statute is satisfied, and this Court turns to the due process analysis.

### B. Exercise of personal jurisdiction over Defendant Midlink comports with Due Process

As explained above, due process jurisprudence recognizes two types of personal jurisdiction: specific and general. In its Response to Defendant Midlink's Motion to Dismiss, Plaintiff only asserts that specific jurisdiction is appropriate. (ECF No. 20 at 13.)[3] The United States Court of Appeals for the Fourth Circuit applies a three-part test to determine whether there is *specific* jurisdiction over a defendant: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278.

Midlink argues that there is no specific jurisdiction because "the only business performed by Midlink in this case was conducted in Michigan when it served as a broker between its Michigan client, Peterson Farms, and Navigation Group, Inc., for Navigation Group, Inc. to transport a load for Peterson Farms consisting of sliced apples. Peterson Farms, not Midlink, determined the load origination, destination, and any stops in between.

---

[3] This Court notes that there is no basis to conclude that there is general jurisdiction or that Defendant Midlink's contacts with Maryland are "so 'continuous and systematic' as to render [it] essentially at home" in Maryland. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)).

[Therefore] . . . the suit did not 'arise out of or related to *Midlink's* contacts with the forum.'" (ECF No. 14-1 at 5) (emphasis in original).

On the issue of whether this Court can assert specific personal jurisdiction over Defendant Midlink, the United States District Court for the Western District of Virginia case *Turner v. Syfan Logistics, Inc.*, No. 5:15cv81, 2016 WL 1559176 (W.D. Va. Apr. 18, 2016) is instructive. In *Turner*, the plaintiff brought suit for negligent hiring and retention against the defendant Syfan Logistics, Inc ("Syfan"), an interstate property broker that regularly arranged interstate transport of goods. *Id.* at *1. At the request of a third party, Syfan hired DD Logistics, Inc. ("DD") to haul a load of frozen chicken from Tennessee to West Virginia. *Id.* While driving in Virginia, the DD employee's tractor trailer truck struck the decedent's car, killing him. *Id.* When the plaintiff brought suit in the Western District of Virginia, Syfan moved to dismiss for lack of personal jurisdiction on the grounds that it was a Georgia corporation with its sole place of business in Georgia, it maintained no employees, offices, bank accounts, assets or real property in Virginia, the decision to retain DD occurred in Georgia, and Syfan had no control over the methods, means or details of the transportation. *Id.* Applying the three part test from *Consulting Engineers*, the court found that it did have personal jurisdiction over Syfan.

Notably in its discussion of the first prong, the court found that Syfan purposefully targeted Virginia when the load confirmation agreement contemplated that to transport goods from Moorefield, West Virginia to Chattanooga, Tennessee, there would necessarily be travel through Virginia. *Id.* at *4. Therefore, Syfan "purposefully targeted Virginia as a state through which DD would transport the load." *Id.* In addition, the court considered that

10

as an interstate trucking broker, Syfan engaged in the business of arranging for interstate shipments regularly and therefore "[i]t [could] come as no surprise to Syfan that litigation in Virginia might ensue when Syfan's conduct ensured DD would haul a load of frozen chicken across a significant portion of the state." *Id.* at \*5. The court rejected Syfan's argument that it was DD who "unilaterally chose to carry the load through Virginia," given that the load confirmation clearly anticipated this fact. *Id.* at \*6. Further, the court found that "Syfan's conduct directed at Virginia gave rise to Turner's cause of action" given that the "accident that killed [the decedent] arose from Syfan's hiring of DD to haul chicken through Virginia." *Id.* at \*7.

Turning to the first prong of the *Consulting Engineers* test, "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State," on its website Defendant Midlink boasts its nationwide coverage with "an extensive network of reliable carriers to move . . . truckloads throughout the US." (ECF No. 20-3.) In addition, it lists the east coast as an area of strength. (*Id.*) In align with these services, at the request of its client, Defendant Midlink arranged for the transportation of fresh produce from Michigan to Pennsylvania, with two intermediate stops in Maryland. The Agreement that Defendant Midlink brokered, then, obligated Defendant Navigation to travel through Maryland. Thereby, Defendant Midlink purposefully targeted Maryland as a state through which Defendant Navigation would transport the produce, and such transportation through Maryland was a "contemplated future consequence" of Defendant Midlink's action. *See Consulting Engineers*, 561 F.3d at 278 (describing one factor for purposeful availment as "whether the performance of contractual duties was to occur within the forum" (citing

11

*Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982))); *see also Burger King*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985) (explaining that "contemplated future consequences . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum").

Defendant Midlink maintains that because it "did not determine, contract for, or direct that any stops should occur in the State of Maryland," *see* Affidavit of Mark Swetz, ECF No. 14-2 at ¶ k, Maryland does not have personal jurisdiction over it. However, as in *Turner*, the Agreement anticipated that Defendant Navigation would travel through Maryland, regardless of who chose to make stops in Maryland. *Turner*, 2016 WL 1559176 at *6. Therefore, Defendant Midlink cannot plausibly claim that it is surprised that as a result of brokering that Agreement, litigation in Maryland might ensue. Accordingly, this Court finds that Defendant Midlink purposefully availed itself of the privilege of conducting activities in Maryland. *See Brandi v. Belger Cartage Service, Inc.*, 842 F.Supp. 1337, 1341-42 (D. Kan. 1994) (finding personal jurisdiction over the defendant, a nationwide transportation brokerage company, in part because the company "should certainly have foreseen the possibility of litigation arising in a state through which it had arranged for the shipment of goods").

As to the second and third prongs of the *Consulting Engineers* test, the accident that resulted in Jean Vogel's death arose from Midlink's hiring of Navigation to perform the terms of the Agreement. Accordingly, Midlink's conduct directed at Maryland gave rise to Plaintiff's causes of actions against it. This Court also finds that the exercise of personal jurisdiction is constitutionally reasonable under the third prong given that Midlink is a

nationwide business and the accident occurred in Maryland.[4] Accordingly, this Court has personal jurisdiction over Defendant Midlink and Defendant Midlink's Motion to Dismiss for lack of personal jurisdiction is DENIED.

## II. Failure to state a claim

### A. Wrongful death action under Michigan law (Count VII)

Count VII of the Complaint brings a wrongful death action against Defendant Midlink under Michigan law. Defendant Midlink argues that the claim should be dismissed because Maryland, and not Michigan, law applies.[5] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Maryland adheres to the doctrine of *lex loci delicti*, which applies the law of the state "where the tort or wrong was committed." *Laboratory Corp. of America v. Hood*, 395 Md. 608 (2006). The parties dispute whether Maryland law applies as the accident occurred in Maryland, or whether Michigan law applies as Defendant Midlink contracted with Defendant Navigation in Michigan.

---

[4] The United States Supreme Court has directed courts to consider several factors when determining whether the exercise of personal jurisdiction is constitutionally reasonable, including: "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief[, and] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980)).

[5] At the outset, this Court notes that Plaintiff's Complaint brings two wrongful death actions against Defendant Midlink, one under Maryland law (Count V) and one under Michigan law (Count VII). In both states, a wrongful death action is an action against a person whose wrongful act caused the death of another. Md. Code Ann., Cts. & Jud. Proc. § 3-902(a); Mich. Comp. Laws Ann. § 600.2922(1).

Under the doctrine of *lex loci delicti*, Maryland courts "apply the law of the State where the injury—the last event required to constitute the tort—occurred." *Hood*, 395 Md. at 615, 911 A.2d at 845. The Fourth Circuit has further clarified that under Maryland's choice of law rules, the law of the place of injury is "'where the injury was suffered, not where the wrongful act took place.'" *Baker v. Booz Allen Hamilton, Inc.*, Nos. 08-1152, 08-2321, 358 Fed. App'x. 476, 480-81 (4th Cir. Dec. 28, 2009) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (applying Maryland law)); *Dickman v. Banner Life Ins. Co.*, No. WMN-16-192, 2016 WL 7383869 (D. Md. Dec. 21, 2016).

Plaintiff cites *Jones v. Prince George's Cnty.*, 378 Md. 98 (2003) for the proposition that because, presumably, Defendant Midlink's investigation into Defendant Navigation occurred in Michigan, Michigan law should apply. In that case, the plaintiff brought a wrongful death action against multiple defendants based on negligent training and supervision. *Id.* The plaintiff alleged that while the negligent conduct occurred in Maryland, the conduct resulted in a death in Virginia. *Id.* at 109. Under these facts, the court applied Maryland law given that all of the wrongful acts had occurred in Maryland. *Id.* However, in a subsequent suit in the same case in this Court, the Fourth Circuit affirmed the district court's application of Virginia law. *Jones v. Prince George's Cnty. Md.*, No. 08-1397, 355 Fed. App'x. 724, 729 (4th Cir. 2009). In reaching this conclusion, the Fourth Circuit explained that "even if Maryland would have an interest in applying its own substantive law, Maryland's choice of law principles compel the application of Virginia law in this case." *Id.* Further, three years after the decision in *Jones*, the Maryland Court of Appeals explicitly explained that the *lex loci deliciti*

rules require that courts "apply the law of the State where the injury—the last event required to constitute the tort—occurred." *Hood*, 395 Md. at 615.

In this case, the injury necessary to sustain Plaintiff's claims occurred in Maryland when Defendant Morpas struck Jean Vogel's vehicle. Therefore, Maryland law and not Michigan law applies to a wrongful death action against Defendant Midlink, and accordingly Count VII of the Complaint is DISMISSED.

**B. Survival and wrongful death actions under Maryland law (Counts IV and V)**

Count IV of the Complaint brings a survival action against Defendant Midlink and Count V brings a wrongful death action against all of the Defendants. Although not clear in the Complaint, the parties' submissions clarify that the actions are based on the theory that Defendant Midlink negligently hired Defendant Navigation. Under Maryland law, "an employer may be liable for negligence in 'selecting, instructing, or supervising . . . [and independent] contractor.'" *Schramm v. Foster*, 341 F.Supp.2d 536, 551 (D. Md. 2004) (quoting *Rowley v. Mayor and City Council of Baltimore*, 305 Md. 456, 462, 505 A.2d 494, 497 (1986)). Specifically:

> Th[e] duty to use reasonable care in the selection of carriers includes, at least, the subsidiary duties (1) to check the safety statistics and evaluations of the carriers with whom it contracts available on the SafeStat database maintained by [the Federal Motor Carrier Safety Administration], and (2) to maintain internal records of the persons with whom it contracts to assure that they are not manipulating their business practices in order to avoid unsatisfactory SafeStat ratings.

*Id.* Defendant Midlink argues that Plaintiff's Complaint merely recites the elements of a negligent hiring cause of action without making any specific factual allegations as to how Midlink was negligent in hiring Defendant Navigation. In addition, that "[t]here are no

15

factual allegations as to what Midlink knew, when it knew it, and how it acted upon such information and knowledge." (ECF No. 23 at 5.) In opposition, Plaintiff points to Paragraphs 30 and 31 of the Complaint, which allege:

> 30. Defendant Navigation and/or Defendant Navigation Group has a long and extensive history of violations of the federal motor carrier safety regulations such as:
> a. Failing to preserve drivers' record of duty status for six months;
> b. Failing to conduct post-accident testing;
> c. Furnishing false or misleading information on an MCS-150, MCS 150B, or MCS-150C;
> d. Operating a commercial motor vehicle not in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated;
> e. Unsafe driving;
> f. Authoring and/or submitting false and/or inaccurate reports of duty status;
> g. Failing to require drivers to prepare record of duty statuses in the form and manner prescribed by law;
> h. Failing to have a means of indicating the nature and due date of the various inspection and maintenance operations to be performed;
> i. Failing to keep a record of inspection, repairs and maintenance indicating their date and nature;
> j. Failing to require drivers to prepare driver vehicle inspection reports;
> k. Failing to retain vehicle inspection reports for at least 3 months; and/or
> l. Using commercial vehicles which are not periodically inspected.
>
> 31. Upon information and belief, a significant number of these violations occurred prior to the collision in this case. Nevertheless, Defendant Midlink selected Defendant Navigation and/or Navigation Group as the carrier to transport the load of its client, Peterson Farms, which significantly increased the risk of harm presented by these carriers to innocent third parties such as Jean. Upon information and belief, Defendant Midlink failed to properly investigate or completely ignored Defendant Navigation's and/or Defendant Navigation Group's extensive history of violations of the federal motor carrier safety regulations.

(ECF No. 2 at ¶¶ 30-31.)

Accepting as true the facts alleged in Paragraphs 30 and 31, Plaintiff's survival and wrongful death actions against Defendant Midlink survive a motion to dismiss. Plaintiff alleges at least twelve Federal Motor Carrier Safety Administration Regulation violations by Navigation. Defendant Midlink's insistence that Plaintiff needed to allege what Midlink actually knew misconstrues the duty of reasonable care articulated by this Court in *Schramm*. Plaintiff has plausibly alleged that given the list of Navigation's violations, Defendant Midlink failed to use reasonable care by selecting Navigation, maintaining Navigation in its stable of carriers, failing to check the safety statistics and evaluations of Navigation, and/or ignoring or failing to appreciate the significance of these violations. (ECF No. 2 at ¶ 48.) Therefore, Defendant Midlink's Motion to Dismiss Count IV of the Complaint and Count V as alleged against Midlink is DENIED.

## CONCLUSION

For the reasons stated above, Defendant Midlink's Motion to Dismiss (ECF No. 14) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to the wrongful death action under Michigan law (Count VII) and DENIED as to the survival and wrongful death actions under Maryland law (Counts IV and V).

A separate Order follows.

Dated: November 9, 2017

_____/s/_____
Richard D. Bennett
United States District Judge